UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

GREGORY TRENT WASHINGTON,

     Petitioner,

v.                              Case No. 8:13-cv-2523-KKM-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

Gregory Trent Washington, a Florida prisoner, filed a timely[1] pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his drug-related state convictions based on alleged failures of his trial counsel. (Doc. 1.) Having considered the petition (*id.*), the response in opposition (Doc. 12), and Washington's reply (Doc. 22), the

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitations period is tolled during the pendency of a properly filed state postconviction motion. *See* § 2244(d)(2). Washington's conviction was affirmed on June 27, 2007. His judgment became final on September 25, 2007, upon expiration of the 90-day window to petition for a writ of certiorari in the United States Supreme Court. *See Bond v. Moore*, 309 F. 3d 770 (11th Cir. 2002). Washington allowed 98 days of untolled time to elapse before he filed his postconviction motion on January 2, 2008. The motion remained pending until the state appellate court's mandate issued on April 24, 2013. Washington filed his § 2254 petition 153 days later, on September 25, 2013. Therefore, a total of 251 days of untolled time expired, and the petition is timely.

Court orders that the petition is denied.[2] Furthermore, a certificate of appealability is not warranted.

## I.   BACKGROUND

### A. Procedural Background

Washington and his co-defendant, Darryl Williams, were tried jointly in state court. The jury convicted Washington of attempted trafficking in cocaine and conspiracy to traffic in cocaine. (Doc. 14, Ex. A2.) The state trial court sentenced him to a total of 20 years in prison. (Doc. 14, Ex. A4.) The state appellate court per curiam affirmed Washington's convictions and sentences. (Doc. 14, Ex. A10.) Washington moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 14, Exs. B1, B2 & B4.) The state court conducted an evidentiary hearing on several grounds and denied Washington's motion. (Doc. 14, Exs. B3, B7 & B9.) The state appellate court per curiam affirmed the denial. (Doc. 14, Ex. B13.)

### B. Factual Background

Tampa Police Detectives Jose Feliciano and Anthony Tyson arranged an undercover sale of one kilogram of cocaine with the assistance of a confidential informant ("CI"). The CI had a connection to Washington's co-defendant, Williams, whom the CI

---

[2] Washington's request for an evidentiary hearing is denied. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

knew as "Four"; when planning the deal, the CI did not mention anything about Washington to police. (Doc. 14, Ex. A7, pp. 174, 198-99, 268.)

Detective Feliciano posed as a drug seller. The CI drove Williams and Washington to a pre-arranged meeting location to make the purchase. (*Id.*, pp. 239-40.) Detective Feliciano, wearing an audio recording device, arrived and got into the CI's vehicle. (*Id.*, pp. 242, 247.) Washington said that they originally wanted to buy two but they wanted to start with one first. (*Id.*, pp. 247-48.) Washington gave Detective Feliciano a bag with cash. (*Id.*, pp. 253, 256.) Williams said that they could do as many as five a week. (*Id.*, p. 253.) When Detective Feliciano indicated he would take the money back to his vehicle and return with the drugs, Williams grabbed the money from Detective Feliciano and told him to produce the drugs first. (*Id.*, pp. 230-31, 254, 257, 276.)

Detective Feliciano said he was going to get the drugs. (*Id.*, p. 254.) Although his original plan was to complete the exchange of drugs for money, Detective Feliciano would have felt uncomfortable being in CI's car with both the drugs and the money. (*Id.*, pp. 254-56.) Therefore, after he exited the CI's vehicle, Detective Feliciano signaled for other officers to approach. (*Id.*, pp. 255.) Police arrested Washington and Williams at the scene. (*Id.*, pp. 184-86.) The State played the recording of the conversation between Detective Feliciano, Williams, and Washington that occurred in the CI's vehicle. (*Id.*, pp. 251-54.)

Washington called the CI to testify at trial. The CI testified that he only gave police Williams's name and that he did not know anything about Washington. (*Id.*, pp. 325-26.) The CI testified that when he picked up Williams, Williams said he was going to bring someone with him, and Washington got into the vehicle. (*Id.*, p. 331.) The CI said that while they were in the car, Williams did the talking and Washington did not say much. (*Id.*, p. 332.) The CI testified that when Detective Feliciano exited the car after stating he was going to go get the cocaine, Washington said that he wanted to leave and that both Washington and Williams became persistent about leaving. (*Id.*, pp. 337-38.)

The CI testified that he was paid $2,000 for his involvement. (*Id.*, p. 339.) He acknowledged that he was on felony probation and that he had no other employment while serving as an informant. (*Id.*, pp. 319-20.) He testified that he learned about making money as an informant while he was in federal prison. (*Id.*, p. 320.) The CI believed he could make "big money" working with federal authorities, and initially thought he was working with DEA agents, not state authorities. (*Id.*, p. 320-31.) He conceded that his primary motivation was getting paid. (*Id.*, p. 376.)

## II.   STANDARDS OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d)

provides that federal habeas relief cannot be granted on a claim adjudicated on the merits

in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal

law "if the state court arrives at a conclusion opposite to that reached by [the Supreme]

Court on a question of law or if the state court decides a case differently than [the Supreme]

Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362,

413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of

the United States Supreme Court "as of the time of the relevant state-court decision." *Id.*

at 412. A decision involves an "unreasonable application" of clearly established federal law

"if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and

defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The state may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental

miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Washington alleges ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally

competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV. <u>ANALYSIS</u>

### A. Ground One

Washington contends that trial counsel was ineffective for not moving to sever his trial from Williams's trial. He claims that the state court would have granted a severance because the overwhelming evidence against Williams undercut Washington's mere presence defense. Washington contends that the State would not have had enough evidence to convict him if he was tried separately from Williams.

At the postconviction court evidentiary hearing, Washington testified that he told counsel he wanted the trials severed. (Doc. 14, Ex. B8, p. 661.) Counsel agreed that she and Washington discussed a motion to sever. (*Id.*, p. 637.) Counsel testified to her belief that the majority of the evidence implicated Williams and stated that she "thought [Washington] would be better off sitting next to a guy that was guiltier than he was." (*Id.*, p. 637.) Counsel testified that she and Washington mutually decided not to seek a severance. (*Id.*, p. 639.)

The postconviction court denied Washington's claim. The court found that the recorded conversation "was the most incriminating evidence introduced at trial against Defendant and he has failed to show why this evidence would not have also been introduced at his trial if a severance was granted." (Doc. 14, Ex. B9, p. 732.) The court found that a severance thus would offer little benefit. (*Id.*) Therefore, the state court found,

counsel's "strategy of trying to make Defendant look innocent in comparison to his co-defendant was reasonable under the norms of professional conduct." (*Id.*, pp. 732-33.)

Washington does not show that the state court unreasonably denied his claim. The state court's finding that counsel's decision was strategic is a finding of fact that is presumed correct. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998))); *DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (stating that a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact.").

Washington does not rebut the presumption of correctness by clear and convincing evidence. *See* § 2254(e)(1). Washington argues that counsel's evidentiary hearing testimony contained inconsistencies and that her testimony that the decision was strategic was prompted by a leading question. But Washington's allegations fall short of establishing that the postconviction court's factual determination was incorrect. *See, e.g., Ward*, 592 F.3d at 1177 ("Clear and convincing evidence [to rebut the presumption that the state court's factual finding is correct] entails proof that a claim is 'highly probable,' a standard

11

requiring more than a preponderance of the evidence but less than proof beyond a reasonable doubt.") (citation omitted).[3]

Therefore, to show entitlement to relief, Washington must demonstrate that counsel's strategic decision was patently unreasonable. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it" even when the decision "appears to have been unwise in retrospect.") (quotation omitted); *see also Franks*, 975 F.3d at 1176 ("Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices. . . . For Franks to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct.") (emphasis in original); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

---

[3] Washington similarly argues that the state court erred in determining that counsel's testimony was credible. The state court's order did not contain an express credibility determination. To the extent that such a determination is implied by the state court's acceptance of counsel's evidentiary hearing testimony in reaching its decision, Washington fails to rebut the presumption of correctness afforded to any such determination. *See Rolling*, 438 F.3d at 1301.

Washington does not make this showing. The testimony that the state court accepted shows that counsel believed the State's evidence more strongly implicated Williams. Therefore, she concluded that a joint trial would make Washington appear less culpable, and made a strategic choice not seek a severance. The state court's ruling that this strategic decision fell within the wide range of professionally competent assistance is reviewed under a doubly deferential standard of review. *See Richter*, 562 U.S. at 105; *see also Pooler v. Sec'y, Fla. Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential.") (internal quotation marks and citation omitted). Under that standard, Washington fails to show entitlement to relief under § 2254(d).

Within Ground One, Washington also contends that he was deprived of his right to confront and cross-examine Williams when Williams's statements were introduced through other witnesses' testimony. Washington argues that "counsel allowed hearsay statements of a non-testifying co-Defendant that were accusatory in nature and such statements required severance." (Doc. 1, p. 7.) To the extent Washington attempts to raise a distinct claim that trial counsel was ineffective for not moving to sever the trials on the basis that introducing Williams's out-of-court statements at a joint trial would violate his rights under the Confrontation Clause, he cannot obtain relief.

13

This aspect of Washington's ineffective assistance claim remains unexhausted. (Doc. 14, Ex. B1, pp. 15-20; Ex. B2, pp. 82-86.) Washington cannot return to state court to raise the claim in an untimely postconviction motion. *See* Fla. R. Crim. P. 3.850(b). Therefore, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Washington does not establish that an exception applies to overcome the default.

Notwithstanding the default, Washington fails to show entitlement to relief.[4] The Confrontation Clause of the Sixth Amendment provides that in a criminal prosecution, "the accused shall enjoy the right . . . to be confronted by the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause permits "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). But the Confrontation Clause does not apply to non-testimonial out-of-court statements. *See Whorton v. Bocking*, 549 U.S. 406, 420 (2007) ("Under *Crawford*, . . . the Confrontation Clause has no application" to "an out-of-court nontestimonial statement not subject to prior cross-examination.").

Testimonial statements include those "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at

---

[4] Respondent does not address Washington's argument that counsel was ineffective in not moving to sever the trials on Confrontation Clause grounds. (Doc. 12, pp. 38-42.)

a later trial." *Crawford*, 541 U.S. at 52; *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (providing that statements are testimonial when "circumstances objectively indicate that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.").

Washington does not establish that Williams's statements to the CI and to Detective Feliciano while he was undercover were testimonial, since they were not made for use at a future trial. *See, e.g.*, *United States v. Makarenkov*, 401 F. App'x 442, 444 (11th Cir. 2010) ("[T]he statements made by [a co-conspirator] to the confidential informant were not testimonial because the statements were not made under circumstances in which he would expect his statement to be used in court—he believed he was speaking to a trusted accomplice in crime. Therefore, the admission of the [co-conspirator's] statements did not violate Makarenkov's rights under the Confrontation Clause."); *United States v. Underwood*, 446 F.3d 1340, 1347 (11th Cir. 2006) (stating that recorded statements of a co-conspirator to an informant made "in furtherance of the criminal conspiracy . . . clearly were not made under circumstances which would have led him reasonably to believe that his statement would be available for use at a later trial" because had the declarant known he was talking to an informant "it is clear that he never would have spoken to [the informant] in the first place.").

As Washington fails to show any Confrontation Clause violation due to the statements' introduction, he does not show that counsel was ineffective in not making this argument. Nor does he establish reasonable probability of a different outcome had counsel moved to sever the trials on this basis. Washington is not entitled to relief on Ground One.

## B. Ground Two

Washington argues that trial counsel was ineffective for not moving to dismiss the charges because of "due process concerns" with the CI. Washington abandons Ground Two in the reply. (Doc. 22, p. 25.) Accordingly, the Court will not consider Ground Two.

## C. Ground Three

Washington claims that counsel was ineffective for not making a hearsay objection when Detective Feliciano repeated out-of-court statements made by the CI "that also contained double hearsay of Petitioner and" Williams. (Doc. 1, p. 10.)[5] Washington alleges

---

[5] In his § 2254 petition, Washington also contends that counsel also should have made a hearsay objection during Detective Tyson's testimony. However, Washington abandoned this aspect of the claim in state court. In ground four of his initial and amended postconviction motions, he raised the ineffective assistance claim with respect to Detective Tyson's testimony. (Doc. 14, Ex. B1, pp. 28-30; Ex. B2, pp. 92-94.) In moving to amend ground four, Washington stated that it was "insufficient and improper" as presented. (Doc. 14, Ex. B2, p. 132.) Washington's amended version of ground four addressed Detective Feliciano's testimony. (*Id.*, pp. 134-35.) To the extent Washington challenges counsel's performance regarding Detective Tyson's testimony, the claim is unexhausted and is now procedurally defaulted. *See Smith*, 256 F.3d at 1138. Washington does not establish the applicability of an exception to overcome the default. *See id.* Notwithstanding the default, Washington fails to show entitlement to relief because he fails to meet his burden under *Strickland* for the reasons discussed in the body of this order.

that absent such hearsay statements, the State's evidence was insufficient to prove that Washington knew of an arranged sale of one kilogram of cocaine.

In summarily denying this claim, the postconviction court found that "even if Detective Feliciano's testimony regarding his conversation with [the CI] would have been excluded as hearsay, the amount of cocaine and money to be exchanged during the sting would still have been introduced into evidence" through the testimony of the detectives and the CI. (Doc. 14, Ex. B3, p. 143.) Therefore, the postconviction court found that "defense counsel's failure to object did not prejudice" Washington. (*Id.*)

Washington appears to contend that the state court's ruling was unreasonable because the detectives' testimony itself was reliant on information from the CI. However, the record supports the state court's conclusion.[6] Detective Feliciano testified about his interactions with Washington and Williams. He explained that they were both in the CI's car when he got in, and that he had a "short conversation where Mr. Washington told me that they had intended to buy two but he wanted to buy one first." (Doc. 14, Ex. A7, p. 247.) Detective Feliciano testified that it was understood they were referencing kilograms of cocaine. (*Id.*, pp. 248, 251.) Detective Feliciano testified that Washington handed him

---

[6] To show attempt, the State had to prove beyond a reasonable doubt that Washington "did some act toward committing the crime of trafficking in cocaine that went beyond just thinking or talking about it" and that he "would have committed the crime except that he failed." (Doc. 14, Ex. A1, p. 40.) The three elements of trafficking in cocaine are (1) "Washington knowingly purchased a certain substance"; (2) "The substance was cocaine or a mixture containing cocaine; and (3) the quantity of the substance involved was 28 grams or more." (*Id.*, p. 41.)

a bag of money and said, "this is for one." (*Id.*, p. 253.) He testified that "they" said it was $19,800, which would be a reasonable price for one kilogram of cocaine. (*Id.*, p. 257.) Detective Feliciano testified about the recording of their conversation as it was played. (Doc. 14, Ex. A7, pp. 252-54.) This testimony supports the conclusion that Washington was not prejudiced by counsel's failure to object to any hearsay statements of the CI to which Detective Feliciano might have testified.

Accordingly, Washington's argument falls short of meeting the AEDPA's stringent and doubly deferential standard of review, under which this claim must be assessed. *See Richter*, 562 U.S. at 105; *see also Ledford v. Warden, Ga. Diagnostic and Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (stating that the AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and that "federal review of final state court decisions under § 2254 is greatly circumscribed and highly deferential.") (internal quotation marks and citations omitted).

Washington has not shown that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Three.

### D. Ground Four

Washington contends that trial counsel was ineffective for not objecting when the prosecutor said during voir dire that the State did not have to prove the crimes with 100 percent certainty:

> [STATE]: [T]he standard of proof means to what level does the State have that burden [to prove a crime was committed and the defendant was the person who committed it]. What do we have to prove it to? And it is beyond a reasonable doubt. And I know that my folks that have been on a criminal jury at least here in Florida I can assume have heard that before, beyond a reasonable doubt. Right? Okay.
>
> Now, and I'm going to pick on you [Prospective Juror One] because you just happened to be right in front of me. In your opinion and based upon your experience does the standard of proof, beyond a reasonable doubt, does that mean that the State has to prove these charges to you 100 percent so that you are absolutely certain that it happened and that this person did it?
>
> [PROSPECTIVE JUROR ONE]: No.
>
> [STATE]: Okay. That's the right answer. Did everybody he[ar] that? Okay. So we can agree that beyond a reasonable doubt does not mean 100 absolute certainty. That's correct. But it also is beyond a reasonable doubt, the highest standard that we have. Would you agree with me there, [Prospective Juror Two]?
>
> [PROSPECTIVE JUROR TWO]: Yes, ma'am.

19

> [STATE]: Okay. Everyone can grasp that? Beyond a reasonable doubt is not 100 percent.

(Doc. 14, Ex. A7, pp. 22-23.) Washington contends that the prosecutor's statements lessened the State's burden of proof.

The postconviction court summarily denied Washington's claim, finding that he could not demonstrate prejudice as a result of counsel's failure to object. (Doc. 14, Ex. B3, p. 145.) As for deficiency, the state court noted that the prosecutor's statement was not technically incorrect, but "might be ambiguous enough that it may be construed as either minimizing the importance of reasonable doubt or shifting the burden to the defendant to prove that reasonable doubt existed." (*Id.*) Therefore, his counsel might have succeeded in an objection to clarify the burden and which party must meet it. The state court's order suggests that counsel likely had a meritorious basis to object to the comment as misleading or unclear with respect to the burden and which party must meet it. However, the state court concluded that Washington failed to show that the comment undermined confidence in the outcome of the proceeding because any ambiguity was "severely limited" by (1) the prosecutor's statements that reasonable doubt is the highest standard that can be required and that the State carried the burden of proof, (2) each defense attorney's explanations of reasonable doubt, and (3) the court's jury instruction on reasonable doubt. (*Id.*)

Washington has not shown that the state court unreasonably denied his claim. He contends that the state court erred in finding that any prejudice was mitigated because the trial court gave no curative instruction. However, as the postconviction court pointed out, the jury was instructed on the reasonable doubt standard. (Doc. 14, Ex. A1, pp. 54-55.) The jury was also instructed that they must follow the law provided by the court. (*Id.*, p. 60.) The jury is presumed to have followed the instructions. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions.").

In contending that the postconviction court erred by finding that any ambiguity in the prosecutor's statement was significantly limited, Washington also argues that (1) the statement may have affected the jury's ability to understand the conspiracy instruction and (2) the State returned to this "theme" in closing argument. Washington therefore claims that "the voir[] dire arguments, closing arguments and ambiguous instruction on proof of conspiracy agreement or confederation allowed the State to obtain the conspiracy conviction without meeting the reasonable doubt standard." (Doc. 1, p. 13.)

First, Washington fails to show that the state court's ruling was unreasonable because the prosecutor's voir dire statements affected the jury's ability to comprehend the conspiracy instruction. The jury was instructed that to find Washington guilty of conspiracy to traffic in cocaine, the State had to prove beyond a reasonable doubt that (1)

21

Washington had the intent that the offense of trafficking in cocaine be committed; and (2) in order to carry out the intent, Washington agreed, conspired, combined, and/or confederated with Williams to cause trafficking in cocaine to be committed. (Doc. 14, Ex. A1, p. 48.) Washington makes no argument that this instruction was erroneous, and it is consistent with the standard jury instruction in Florida. *See* Fla. Std. Jury Instr. (Crim.) 5.3. Washington's allegation that the prosecutor's voir dire statements impacted the jury's ability to understand or follow the conspiracy instruction is too speculative to show that the state court's conclusion on his ineffective assistance of counsel claim was unreasonable under § 2254(d). *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

Nor does Washington show that that the postconviction court's ruling was unreasonable to the extent he claims that the voir dire statements might have affected the jury when weighed in the light of the prosecutor's closing argument. Washington contends that the State was "[r]eturning to the theme during closing, conceding no direct evidence presented to establish the cocaine amount, and then continues at that [sic] the princip[al] theory does not require proof as to which Defendant made which statements." (Doc. 1, p. 13.) Washington does not cite specific portions of the closing argument. However, the Court notes that the prosecutor said reasonable doubt was not "a hundred percent

certainty" and that while the State has to prove the charges beyond a reasonable doubt, the law "does not say how the State has to prove that." (Doc. 14, Ex. A7, pp. 411, 415.)

The prosecutor also addressed the principals theory, which applied to attempted trafficking. After discussing the instruction,[7] he stated, "you don't have to decide who said every single statement. You don't have to decide who was the main guy. . . . That really doesn't matter because of the principal theory all you have to decide is they worked together. They helped each other and they both knew what was going on and that audio tape gives you all of those elements." (*Id.*, pp. 421-22.)

Washington does not establish that the closing argument was improper or that the jury misinterpreted the law because of the prosecutor's statements. His claim is wholly speculative and is therefore insufficient to establish that the state court unreasonably rejected his ineffective assistance claim. *See Tejada*, 941 F.2d at 1559. He fails to demonstrate prejudice as a result of counsel's lack of objection to the voir dire statement.

---

[7] The principals instruction provides:

> If Defendant Gregory Trent Washington helped another person or persons attempt to commit Attempted Trafficking in Cocaine, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if
>
> 1.   the defendant had a conscious intent that the criminal act be done and
>
> 2.   the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually attempt to commit the crime.

(Doc. 14, Ex. A1, p. 52.)

Washington has not shown that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Four.

### E. Ground Five

Washington alleges that trial counsel was ineffective for calling the CI at trial because the CI "provided significant damaging testimony against" him. (Doc. 1, p. 14.) Washington claims that without the CI's testimony, the State could not have proved the offense of conspiracy to traffic in cocaine. Washington further claims that calling the CI was not necessary in order to argue about the CI's bad character.

At the postconviction court evidentiary hearing, counsel testified that the CI was "such a bad guy and such a bad CI, and frankly, was pretty honest about how hideous he was, that it wasn't something that we wanted to lose out on, and we knew that the State wasn't going to call him probably." (Doc. 14, Ex. B8, p. 640.) Counsel testified that the CI's relationship with law enforcement "was almost nonexistent," that law enforcement knew little about the CI before they used him, that the CI admitted to lying, and that the CI admitted he got paid more money "the bigger case that he made." (*Id.*) Counsel testified, "I mean, he was a defense attorney's dream as far as putting, you know, getting to call a CI, and made the case better for us." (*Id.*)

The state court found that counsel made a reasonable strategic decision to call the CI. The state court concluded that "[b]ecause [the CI's] unreliability and motivation was such a key to the defense, the Court finds [counsel's] strategic decision to call him to testify was reasonable under the norms of professional conduct." (Doc. 14, Ex. B9, pp. 733-34.)

Washington does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Washington does not rebut the presumption of correctness afforded to the state court's determination that counsel's decision to call the CI was strategic. *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [a reviewing court] will seldom, if ever, second guess."); *see also Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."). Nor does Washington show that the state court unreasonably determined that counsel's strategic decision to call the CI was reasonable "under the norms of professional conduct." *See Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("It is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence.").

Washington contends that the state court's analysis was incomplete. He claims that the state court failed to consider that, although counsel attempted to raise an issue about

25

the CI's credibility, "motivations, methods, and reliability are a question of law under the due process clause, not one of credibility." (Doc. 1, p. 15.) He also contends that the state court failed to consider that calling the CI allowed the Detectives to repeat the CI's damaging hearsay statements. Washington's argument amounts to a reiteration of the claims made in Ground Two, which he subsequently abandoned, and Ground Three, which has been rejected.

Additionally, Washington contends that the state court failed to consider the damaging effects of the CI's testimony with respect to his mere presence and abandonment defenses. He claims that the CI's testimony implicated him in the conspiracy and was insufficient to support an abandonment defense. But as addressed in Ground Seven, *infra*, some of the CI's testimony supported the abandonment theory. In addition, Washington fails to show that any negative impact from the CI's testimony entitles him to relief under *Strickland* because the recording and Detective Feliciano's testimony indicate that Washington was a knowing participant in the offenses, and therefore he does not establish that the state court unreasonably concluded that he suffered no prejudice from calling the CI. Washington does not establish that the state court unreasonably applied *Strickland* in denying his claim, or that the state court's ruling was based on an unreasonable factual determination.

Finally, within Ground Five, Washington appears to allege that he is entitled to relief based on the cumulative effect of counsel's alleged errors. Washington did not present this claim to the state court. (Doc. 14, Exs. B1, B2 & B4.) The claim is unexhausted, and Washington does not establish applicability of an exception to overcome the resulting procedural bar. *See Smith*, 256 F.3d at 1138. Notwithstanding the default, Washington has not shown entitlement to relief. As he fails to show entitlement to relief on any of his ineffective assistance claims, he cannot obtain relief based on cumulative error. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (stating that when none of the individual claims of error have merit, "we have nothing to accumulate"). Ground Five is denied.

## F. Ground Six

Washington argues that trial counsel was ineffective for presenting an inadequate closing argument. He contends that counsel should not have relied on arguments made by Williams's counsel, and should have presented a "separate[ ]" closing argument. (Doc. 1, p. 18.) He contends that any reliance on Williams's argument confused the jury because of the instruction that evidence applicable to each defendant must be considered separately.[8]

---

[8] The jury was instructed:

> A separate crime is charged against each defendant in each count. The defendants have been tried together; however, the charges against each defendant and the evidence applicable to each defendant must be considered separately. A finding of guilty or not guilty

27

Also, Washington contends that trial counsel failed to argue that the CI only had contact with Williams, not Washington, when setting up the deal; that there was conflicting evidence about whether he or Williams brought the money; that Detective Tyson testified that Washington was never announced as a target of the investigation; that Detective Feliciano vacillated as to his ability to identify voices on the recording; and that the only evidence that he knew the deal was for one kilogram of cocaine was "various inferences." (*Id.*, p. 17.)

The postconviction court held an evidentiary hearing on this claim. Trial counsel explained that there were inconsistencies in law enforcement testimony, as well as inconsistencies between the CI's testimony and the State's evidence. (Doc. 14, Ex. B8, p. 647.) Counsel testified that, because "those kind of things were issues that benefitted both Mr. Williams and Mr. Washington," she and Williams's counsel decided they would not repeat arguments about inconsistencies. (*Id.*) Counsel explained that she and Williams's counsel decided to work toward common interests "as much as [they] could without jeopardizing the rights of [their] individual clients." (*Id.*, pp. 648.) Counsel testified that

---

as to one of the defendants must not affect your verdict as to the other defendant or the other crimes charged.

(Doc. 14, Ex. A1, p. 64.)

Williams's attorney "handled the majority" of the argument about inconsistent evidence and that she raised some of those arguments. (*Id.*, p. 647.)

The state court concluded that Washington's and Williams's defenses had many common components, and that while the attorneys decided not to repeat arguments, they both highlighted inconsistencies in the evidence. (Doc. 14, Ex. B9, p. 734.) The state court determined that counsel "strenuously attacked" such inconsistencies. (*Id.*) The state court concluded that "[b]ecause during clos[ing] both [Williams's counsel] and [counsel] adequately attacked the inconsistent testimony by the State witnesses, [counsel] was not ineffective for failing to do so." (*Id.*, pp. 734-35.)

Washington fails to show entitlement to relief. To the extent he contends that counsel should have reiterated the same issues raised by Williams's counsel in order to present a "separate" defense, the jury was aware that issues already addressed by Williams went to alleged weaknesses with the State's evidence.[9] And as the state court noted, counsel did emphasize inconsistencies in the State's evidence. (Doc. 14, Ex. A7, pp. 429-31.) Washington's assertion that this presentation confused the jury is simply too speculative to warrant federal habeas relief. *See Tejada*, 941 F.2d at 1559.

---

[9] Williams's counsel argued that the CI was not reliable, that the CI's testimony was inconsistent with the detectives' testimony, and that there were inconsistencies in the State's evidence. (*Id.*, pp. 390-409.)

Washington contends that the state court failed to address all aspects of his claim, however. He argues that the state court's order does not discuss his assertion that counsel's failure to argue about and distinguish evidence favorable to him left him without a coherent defense. To the extent the state court's order did not address such allegations with specificity, this Court nevertheless presumes that the state court denied them.[10] A review of counsel's closing argument shows that she argued that the evidence pointed to Williams, not Washington; that the jury should discount the recording because the speakers' identities were not apparent; that inconsistencies in the State's evidence were so overwhelming that the jury could not know what actually happened and that conflicts in the evidence can create reasonable doubt; that the CI was wholly unreliable; and, as an alternative, that Washington abandoned the commission of the offenses. (Doc. 14, Ex. A7, pp. 425-32.)

Therefore, while counsel did not address every specific factual matter Washington mentions in this ground, counsel did present arguments why the State failed to meet its

---

[10] Ordinarily, when a state court addresses some claims raised by a defendant, but not a claim that is later raised in a federal habeas proceeding, the federal habeas court presumes that the state court denied the claim on the merits. *Johnson v. Williams*, 568 U.S. 289 (2013). This presumption is rebuttable though, and de novo review of such a claim is appropriate when "the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court[.]" *Id.* at 303. Even assuming that the state court did not rule on this part of Washington's claim, he fails to show entitlement to federal habeas relief under de novo review for the same reasons addressed in this order. *See, e.g.*, *Richter*, 562 U.S. at 105 ("Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.").

burden of proof. Washington has not established that counsel performed deficiently in her presentation of the closing argument. *See, e.g.*, *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); *see also Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) ("[N]o relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done [as defense counsel did at trial]. This burden, which is petitioner's to bear, is and is supposed to be a heavy one."). Nor does Washington show a reasonable probability of a different outcome had counsel argued as he suggests.

Washington has not shown that the state court's decision involved an unreasonable application of *Strickland*. Nor does he demonstrate that it was based on an unreasonable factual determination. As a result, he is not entitled to relief on Ground Six.

## G. Ground Seven[11]

Washington contends that trial counsel was ineffective for "presenting [an] invalid defense" of abandonment to the conspiracy charge. (Doc. 1, p. 19.) Florida law provides:

---

[11] In Washington's reply, under a section labeled "VII," he states, "Petitioner accepts the State's response to this Count VIII count retracts such ground as consideration for relief." (Doc. 22, p. 39.) It appears that Washington intends to abandon Ground Seven of the § 2254 petition, but his intent is not explicitly clear due his inconsistent identification of the claim as both "VII" and "VIII". Accordingly, the Court reviews Ground Seven on the merits, even if he has abandoned it.

> It is a defense to a charge of . . . criminal conspiracy that, under circumstances manifesting a complete and voluntary renunciation of his or her criminal purpose, the defendant:
>
> . . .
>
> After conspiring with one or more persons to commit an offense, persuaded such persons not to do so or otherwise prevented commission of the offense.

§ 777.04(5)(c), Fla. Stat.

Washington argues that the evidence did not support the abandonment of the conspiracy charge because he failed to persuade Williams to abandon the trafficking offense and did not otherwise prevent its commission. Washington further contends that the abandonment defense required him to admit being part of the conspiracy, even though he has always denied any involvement.

At the postconviction evidentiary hearing, counsel testified that she believed she could argue a mere presence defense because of evidence that the CI did not know Washington and instead made the deal with Williams. (Doc. 14, Ex. B8, pp. 640-41.) Counsel explained, however, that she had to address the audio recording. (*Id.*, p. 641.) Counsel testified that because of the recording, "it would've been very difficult to argue strictly mere presence because it sounded like there was involvement on the part of all the individuals that were present in the vehicle." (*Id.*, p. 651.) Therefore, counsel testified, while conflicting defenses are "never a good idea," she believed "we had no choice but to

do it in this case." (*Id.*, p. 641.) She stated that the CI said, "Mr. Washington is going, listen, I don't want to do this anymore. Let's just go. Let's just go. So, you know, I don't know how you don't argue that." (*Id.*) Counsel explained "it was argued more along the lines of he may have been involved in something, and if you believe that he was involved in something, then this is what happened." (*Id.*, p. 650.) She stated that her trial strategy was to argue that Washington did not participate in the offenses and to present an alternative, secondary defense of abandonment. (*Id.*, p. 657.)

The state court rejected Washington's ineffective assistance claim, concluding that the evidence "show[ed] that Defendant knew about the drug deal and also that he may have attempted to call off the deal prior to the police arriving." (Doc. 14, Ex. B9, p. 735.) As a result, the state court found that counsel's "strategic decision to argue both an innocent bystander and an abandonment defense was reasonable under the norms of professional conduct." (*Id.*)

Washington contends that the state court erred in determining that evidence supported an abandonment defense. He claims the defense was not established because he did not convince Williams to abandon the offense. However, the CI's trial testimony indicates that after Detective Feliciano left the vehicle under the guise of retrieving the cocaine, Washington said words to the effect of, "let's go. I want out of here. I want to leave," and that shortly afterward, both Washington and Williams became persistent about

leaving and told the CI to go. (Doc. 14, Ex. A7, pp. 337-38.) Thus, some evidence supported an abandonment defense.

Additionally, as counsel explained at the evidentiary hearing, her primary focus in closing argument was arguing that the State failed to meet its burden of proof. She presented that defense by arguing that the evidence implicated Williams, that the CI was unreliable, and the evidence contained significant conflicts. Washington fails to show that the state court unreasonably concluded that counsel performed deficiently under the circumstances, or that he was prejudiced, by offering abandonment as an alternative theory for the jury to find him not guilty. Washington fails to establish that the state court unreasonably applied *Strickland* in denying his claim or that the state court's ruling was based on an unreasonable determination of fact. Accordingly, he is not entitled to relief on Ground Seven.[12]

### H. Ground Eight

Washington argues that trial counsel was ineffective for not making a motion for a judgment of acquittal (JOA) on the charge of attempted trafficking. When Williams's counsel moved for a JOA, she argued extensively about the conspiracy charge and made a

---

[12] The Court notes that both Washington's state postconviction motion and his § 2254 petition are unclear as to whether he also intends to challenge counsel's presentation of an abandonment defense to the charge of attempted trafficking. Washington does not challenge the state court's interpretation of his claim as involving only the charge of conspiracy. Even assuming that Washington intends to challenge counsel's presentation of an abandonment defense to attempted trafficking and that such a claim is exhausted, the Court finds that Washington fails to show entitlement to relief under either prong of *Strickland*.

"standard motion" with respect to the attempted trafficking charge. (Doc. 14, Ex. A7, pp. 291-99.) Washington's counsel then informed the trial court that while some facts concerning Washington were different, her argument was essentially the same as Williams's counsel's argument. (*Id.*, p. 299.) Counsel went on to argue that the State had not established conspiracy, including the assertion that "although you may arguably have an argument" that Washington was a principal to attempted trafficking, that would not establish conspiracy. (*Id.*, p. 299.)

At the postconviction evidentiary hearing, counsel testified that she did not believe she had a strong JOA argument for attempted trafficking because Detective Feliciano had identified Washington's voice on the recording. (Doc. 14, Ex. B8, p. 652.) As the trial court would have to take the evidence in the light most favorable to the State when considering a motion for JOA, counsel testified, she did not think it was a viable motion. (*Id.*) Counsel testified that she focused on the "stronger" motion for JOA on the conspiracy charge. (*Id.*)

The state court rejected Washington's ineffective assistance claim, finding that "based on the testimony of Detective Feliciano there was not a legal basis to grant a motion for JOA on the attempted trafficking charge." (Doc. 14, Ex. B9, p. 736.) The state court found that counsel cannot be ineffective for failing to make a meritless claim, and that Washington was not entitled to relief. (*Id.*)

Washington fails to show that the state court's denial of his claim was unreasonable. Washington contends that the State's evidence was insufficient to show attempted trafficking because Detective Feliciano's testimony contained "nothing more than stacked inferences by the State's closing's [sic] asking the jury to presume Petitioner knew the deal was for 1 kilo of cocaine, based upon these same stacked inferences." (Doc. 1, p. 21.)

But that is an inaccurate assessment of the record. Detective Feliciano offered significant evidence to establish attempted trafficking. Therefore, Washington does not show that the state court unreasonably rejected his claim on the basis that a JOA motion would have failed because the court would have considered the evidence in the light most favorable to the State. *See Boyd v. State*, 910 So.2d 167, 180 (Fla. 2005) ("A trial court should not grant a motion for judgment of acquittal 'unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974))); *Odom v. State*, 862 So.2d 56, 59 (Fla. 2d DCA 2003) ("A trial court should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt."). Washington does not show entitlement to relief when, as the state court found, counsel is not ineffective for not raising a meritless argument. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is

36

axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Accordingly, Washington fails to show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact. Washington is not entitled to relief on Ground Eight.

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Washington must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Washington has not made the requisite showing. Finally, because Washington is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Washington's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Washington and in Respondent's favor and to **CLOSE** this case.

ORDERED in Tampa, Florida, on September 23, 2021.


Kathryn Kimball Mizelle
United States District Judge